APPEAL,CLOSED,JURY,PROSE−NP,TYPE−F

# U.S. District Court
# District of Columbia (Washington, DC)
# CIVIL DOCKET FOR CASE #: 1:17−cv−00357−TNM

STORMS v. SHINSEKI et al  
Assigned to: Judge Trevor N. McFadden  
Cause: 28:1343 Violation of Civil Rights  

Date Filed: 02/28/2017  
Date Terminated: 08/07/2018  
Jury Demand: Plaintiff  
Nature of Suit: 440 Civil Rights: Other  
Jurisdiction: U.S. Government Defendant  

**Plaintiff**

DERRICK STORMS     represented by   DERRICK STORMS
690 Fifth Avenue
Brooklyn, NY 11215
(917) 635−9675
Email: storms001@hotmail.com
PRO SE

V.

**Defendant**

ERIC K. SHINSEKI    represented by   William Mark Nebeker
U.S. ATTORNEY'S OFFICE
Civil Division
555 Fourth Street, NW
Washington, DC 20530
(202) 252−2536
Fax: (202) 252−2599
Email: mark.nebeker@usdoj.gov
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Defendant**

JOSE D. RIOJAS     represented by   William Mark Nebeker
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Defendant**

KEVIN SECOR       represented by   William Mark Nebeker
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Defendant**

JOHN/JANE DOES
*1− 100, each in their individual*

*capacities*

| Date Filed | # | Page | Docket Text |
|---|---|---|---|
| 02/28/2017 | 1 | | COMPLAINT against JOHN/JANE DOES, JOSE D. RIOJAS, KEVIN SECOR, ERIC K. SHINSEKI ( Filing fee $ 400, receipt number 4616083226) with Jury Demand filed by DERRICK STORMS. (Attachments: # 1 Civil Cover Sheet)(zrdj) (Entered: 03/01/2017) |
| 02/28/2017 | | | SUMMONS (5) Issued as to JOSE D. RIOJAS, KEVIN SECOR, ERIC K. SHINSEKI, U.S. Attorney and U.S. Attorney General (zrdj) (Entered: 03/01/2017) |
| 02/28/2017 | 2 | | MOTION for CM/ECF Password by DERRICK STORMS (zrdj) (Entered: 03/01/2017) |
| 03/01/2017 | | | MINUTE ORDER denying without prejudice Plaintiff's 2 Motion for CM/ECF Password. To obtain such a password, Plaintiff must comply with Local Civil Rule 5.4(b)(2), which Plaintiff's Motion does not do. Plaintiff may re−file his motion, but he must comply with the requirements of the local rule. Signed by Judge Amit P. Mehta on 03/01/2016. (lcapm1) (Entered: 03/01/2017) |
| 04/12/2017 | 3 | | RETURN OF SERVICE/AFFIDAVIT of Summons and Complaint Executed. JOSE D. RIOJAS served on 4/5/2017; KEVIN SECOR served on 3/22/2017; ERIC K. SHINSEKI served on 3/27/2017 (td) (Entered: 04/14/2017) |
| 04/12/2017 | 4 | | MOTION for CM/ECF Password by DERRICK STORMS (td) (Entered: 04/14/2017) |
| 04/20/2017 | | | MINUTE ORDER granting Plaintiff's 4 Motion for CM/ECF Password. Signed by Judge Amit P. Mehta on 04/20/2017. (lcapm1) (Entered: 04/20/2017) |
| 05/20/2017 | | | SUMMONS (2) REISSUED as to non−parties U.S. Attorney and U.S. Attorney General (md) (Entered: 05/20/2017) |
| 06/03/2017 | 5 | | RETURN OF SERVICE/AFFIDAVIT of Summons and Complaint Executed on United States Attorney General. Date of Service Upon United States Attorney General May 25, 2017. (STORMS, DERRICK) (Entered: 06/03/2017) |
| 06/03/2017 | 6 | | RETURN OF SERVICE/AFFIDAVIT of Summons and Complaint Executed as to the United States Attorney. Date of Service Upon United States Attorney on 5/31/2017. Answer due for ALL FEDERAL DEFENDANTS by 7/30/2017. (STORMS, DERRICK) (Entered: 06/03/2017) |
| 07/31/2017 | 7 | | MOTION to Dismiss by JOSE D. RIOJAS, KEVIN SECOR, ERIC K. SHINSEKI (Attachments: # 1 Text of Proposed Order)(Nebeker, William) (Entered: 07/31/2017) |
| 08/01/2017 | 8 | | ORDER advising Plaintiff to respond by September 1, 2017, to Defendants' 7 Motion to Dismiss or risk dismissal of the case. See the attached Order for additional details. Signed by Judge Amit P. Mehta on 08/01/2017. (lcapm1) (Entered: 08/01/2017) |
| 08/01/2017 | | | Set/Reset Deadlines/Hearings: Response to 1 due by 9/1/2017. (zcdw) (Entered: 08/01/2017) |

| | | | |
|---|---|---|---|
| 08/31/2017 | 9 | | Memorandum in opposition to re 7 MOTION to Dismiss filed by DERRICK STORMS. (Attachments: # 1 Exhibit VA OIG Report, # 2 Exhibit Newspaper Article, # 3 Exhibit VA OIG Report 2, # 4 Exhibit VA OIG Report 3, # 5 Exhibit Email)(STORMS, DERRICK) (Entered: 09/01/2017) |
| 09/06/2017 | 10 | | MOTION for Extension of Time to File Response/Reply as to 7 MOTION to Dismiss by JOSE D. RIOJAS, KEVIN SECOR, ERIC K. SHINSEKI (Attachments: # 1 Text of Proposed Order)(Nebeker, William) (Entered: 09/06/2017) |
| 09/06/2017 | | | MINUTE ORDER granting Defendants' 10 Motion for Extension of Time to File Response/Reply. Defendants' Reply is now due on or before October 13, 2017. Signed by Judge Amit P. Mehta on 09/06/2017. (lcapm1) (Entered: 09/06/2017) |
| 09/06/2017 | | | Set/Reset Deadlines/Hearings: Defendants' Reply due by 10/13/2017. (zcdw) (Entered: 09/07/2017) |
| 10/12/2017 | 11 | | MOTION for Extension of Time to File Response/Reply as to 7 MOTION to Dismiss by JOSE D. RIOJAS, KEVIN SECOR, ERIC K. SHINSEKI (Attachments: # 1 Text of Proposed Order)(Nebeker, William) (Entered: 10/12/2017) |
| 10/13/2017 | 12 | | Memorandum in opposition to re 11 MOTION for Extension of Time to File Response/Reply as to 7 MOTION to Dismiss filed by DERRICK STORMS. (Attachments: # 1 Exhibit VA OIG Report 1, # 2 Exhibit VA OIG Report 2, # 3 Exhibit VA OIG Report 3)(STORMS, DERRICK) (Entered: 10/13/2017) |
| 10/13/2017 | | | MINUTE ORDER granting Defendants' 11 Motion for Extension of Time to File Response/Reply. Defendants' Reply is now due on or before November 6, 2017. No further extensions will be granted absent extraordinary circumstances. Signed by Judge Amit P. Mehta on 10/13/2017. (lcapm1) (Entered: 10/13/2017) |
| 10/13/2017 | | | Set/Reset Deadlines/Hearings: Defendants' Reply due by 11/6/2017. (zcdw) (Entered: 10/16/2017) |
| 11/02/2017 | | | Case directly reassigned to Judge Trevor N. McFadden. Judge Amit P. Mehta is no longer assigned to the case. (ztnr) (Entered: 11/02/2017) |
| 11/06/2017 | 13 | | REPLY to opposition to motion re 7 MOTION to Dismiss filed by JOSE D. RIOJAS, KEVIN SECOR, ERIC K. SHINSEKI. (Nebeker, William) (Entered: 11/06/2017) |
| 11/07/2017 | 14 | | MOTION for Leave to File *Surreply* by DERRICK STORMS (STORMS, DERRICK) (Entered: 11/07/2017) |
| 11/27/2017 | | | MINUTE ORDER granting Plaintiff's 14 Motion for Leave to File Surreply. Plaintiff's surreply shall be due before or on December 4, 2017 and shall not exceed 25 pages. SO ORDERED. Signed by Judge Trevor N. McFadden on 11/27/2017. (lctnm3) (Entered: 11/27/2017) |
| 11/27/2017 | | | Set/Reset Deadlines: Plaintiff's surreply due by 12/4/2017. (hmc) (Entered: 11/27/2017) |
| 11/29/2017 | 15 | | MOTION for Extension of Time to File Response/Reply *Sur Reply* by DERRICK STORMS (Attachments: # 1 Exhibit Trial Scheduling Order, # 2 |

| | | | |
|---|---|---|---|
| | | | Text of Proposed Order)(STORMS, DERRICK) (Entered: 11/29/2017) |
| 11/29/2017 | | | MINUTE ORDER granting Plaintiff's 15 Motion for Extension of Time to File Surreply. Plaintiff's surreply shall be due before or on December 18, 2017 and shall not exceed 25 pages. SO ORDERED. Signed by Judge Trevor N. McFadden on 11/29/2017. (lctnm3) (Entered: 11/29/2017) |
| 11/29/2017 | | | Set/Reset Deadlines: Plaintiff's surreply due by 12/18/2017. (hmc) (Entered: 11/29/2017) |
| 12/18/2017 | 16 | | SURREPLY to re 7 MOTION to Dismiss filed by DERRICK STORMS. (STORMS, DERRICK) (Entered: 12/18/2017) |
| 08/06/2018 | 17 | 7 | MEMORANDUM OPINION regarding the named Defendants' 7 Motion to Dismiss. Signed by Judge Trevor N. McFadden on 8/6/2018. (lctnm2) (Entered: 08/06/2018) |
| 08/06/2018 | 18 | 20 | ORDER. For the reasons stated in the 17 Memorandum Opinion, the named Defendants' 7 Motion to Dismiss is GRANTED. The Clerk of Court is directed to close the case. See Order for details. Signed by Judge Trevor N. McFadden on 8/6/2018. (lctnm2) (Entered: 08/06/2018) |
| 10/04/2018 | 19 | 5 | NOTICE OF APPEAL TO DC CIRCUIT COURT as to 18 Order on Motion to Dismiss, 17 Memorandum & Opinion by DERRICK STORMS. Filing fee $ 505, receipt number 0090−5721727. Fee Status: Fee Paid. Parties have been notified. (STORMS, DERRICK) (Entered: 10/04/2018) |

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

Derrick Storms,                                    Civil Action No.: 1:17-cv-00357 (TNM)

      Plaintiff,

  v.

Eric K. Shinseki, Jose D. Riojas,
Kevin Secor; and
John/Jane Does 1-100, each
in their individual capacities,

      Defendants.

## NOTICE OF APPEAL

PLEASE TAKE NOTICE that Plaintiff, Derrick Storms, hereby appeals the to the United States Court of Appeals for the District of Columbia Circuit from this Court's August 6, 2018 Order (ECF No. 17) and the accompanying memorandum opinion (ECF No. 18) that granted the Defendants' motion to dismiss the Plaintiff's complaint, and all other orders and rulings adverse to the Plaintiff in this case.

Dated: October 4, 2018

                                            Respectfully submitted,

                                            s/ Derrick Storms
                                            BY: DERRICK STORMS
                                            690 5th Avenue
                                            Brooklyn, New York 11215
                                            Tel: (917) 635-9675
                                            *Pro se Plaintiff*

## CERTIFICATE OF SERVICE

I hereby certify that service of the foregoing Notice of Appeal, has been served on the Defendants' counsel, to counsel's designated email address, via the Court's electronic filing system at the date of this filing.

s/ Derrick Storms  
BY: DERRICK STORMS  
690 5th Avenue  
Brooklyn, New York 11215  
Tel: (917) 635-9675  
*Pro se Plaintiff*

TO:  
W. Mark Nebeker, Esq.  
Assistant U.S. Attorney  
Civil Division  
555 4th Street, N.W.  
Washington, DC 20530  
Tel: (202) 252-2536  
Email: mark.nebeker@usdoj.gov

| | |
|---|---|
| **Derrick Storms**,<br><br>Plaintiff,<br><br>v.<br><br>**Eric K. Shinseki,** *et al.*,<br><br>Defendants. | Case No. 1:17-cv-00357 (TNM) |

## MEMORANDUM OPINION

The Plaintiff, Derrick Storms, seeks damages from several former high-level officials at the U.S. Department of Veterans Affairs. He claims that these officials violated his First Amendment rights by persuading a private group—the Veterans of Foreign Wars—to terminate his volunteer relationship in response to Mr. Storms writing an article full of damning accusations against the Department. But the Supreme Court has not authorized a suit for damages based on the First Amendment and warns that extending such remedies to new contexts is "a disfavored judicial activity." *Ziglar v. Abbasi*, 137 S. Ct. 1843, 1848 (2017) (internal quotation marks and citation omitted). The Court declines to create the remedy that the Plaintiff seeks, because authorizing damages for this conduct raises complicated policy questions that Congress—not the Judiciary—is equipped to answer. The Defendants' Motion to Dismiss will therefore be granted.

### I. BACKGROUND

On March 6, 2014, Mr. Storms published an article entitled "How veterans can fight back against VA abuse," on the Daily Caller website. Compl. ¶ 11, Ex. 1.[1] The article alleged that to

---

[1] At this stage of the proceedings, I accept the Complaint's well-pled allegations as true. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

meet performance goals tied to bonuses, VA officials had been systematically destroying veterans' disability claims, thereby artificially reducing the backlogs. *Id*. Ex. 1. It called for veterans to sue agency officials for damages, including then-current Secretary Eric Shinseki, whom Mr. Storms blamed for helping to create a corrupt agency culture. *Id*. The piece quickly went viral. Compl. ¶ 12. Mr. Storms—a former U.S. Marine—was then serving as the Vice-Legislative Chairman for the Veterans of Foreign Wars, New York Department (VFW-NY), and the article identified him as such. *Id*. ¶¶ 5, 14, Ex. 5.

That night, Defendant Kevin Secor—the VA's Veterans Service Organizations Liaison officer, Compl. ¶ 8—exchanged emails with the Executive Director of the national Veterans of Foreign Wars organization, Bob Wallace. *Id*. ¶ 15, Ex. 5. Mr. Secor asked Mr. Wallace if he knew that the article was going to be published, *id*. Ex. 5, and when Mr. Wallace assured him that "[t]his is not the VFW position," *id*. Ex. 6, Mr. Secor told him that "any help would be appreciated, I know this will be a topic at tomorrow's stand-up." *Id*. Ex. 7.

The next day, both the VA and the VFW moved quickly. Mr. Secor sent an email asking Raymond Kelley—another VFW official— "did you see what your Legislative Vice Chairman wrote in the Daily Caller?" *Id*. Ex. 10. Mr. Storms alleges that Mr. Secor met with Secretary Shinseki, Defendant Jose Riojas (then the VA's Assistant Secretary for Operations, Security, and Preparedness), and "John/Jane Does 1-100." *Id*. ¶ 21. These individuals jointly resolved to "discredit and defame" Mr. Storms and terminate him from his VFW-NY position, to undermine the op-ed, deter similar articles from Mr. Storms or others, and protect Secretary Shinseki. *Id*. Mr. Secor also allegedly called Mr. Wallace and demanded that the VFW publish a rebuttal article and end Mr. Storms' status as a Vice Legislative Chairman. *Id*. ¶ 25. The VFW's Commander-in-Chief emailed the Daily Caller that same day with a proposed rebuttal piece, *id*.

Ex. 12, and Mr. Wallace forwarded the email to Assistant Secretary Riojas and Mr. Secor. *Id.* Ex. 13.

Three days later, VFW-NY removed Mr. Storms from his position as Legislative Vice Chairman, *id*. Ex. 15 and asked him to write a letter of apology for his article. *Id*. Ex. 16. Although Mr. Storms does not allege that he was salaried, the termination meant that he would not be reimbursed for future VFW travel. *Id*. Ex. 17. Because of his termination, Mr. Storms allegedly suffered various injuries, including chilled speech, emotional damages, lost employment opportunities within the VFW, and reputational harm.

Mr. Storms then sued Secretary Shinseki, Assistant Secretary Riojas, Mr. Secor, and 100 unidentified "John/Jane Does," all in their individual capacities. Compl. 1-2. His Complaint's only count seeks damages for retaliation against First Amendment-protected speech, invoking the Supreme Court's decision in *Bivens v. Six Unknown Fed. Narcotics Agents*, 403 U.S. 388, 91 (1971). *Id*. at 7-8. The named Defendants moved to dismiss, noting that their legal arguments would also apply to the unidentified Defendants as well. Mot. Dismiss 1, n.1.

## II. LEGAL STANDARDS

To avoid dismissal under Fed. R. Civ. P. 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim crosses from conceivable to plausible when it contains factual allegations that, if proved, would 'allow the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Banneker Ventures, LLC v. Graham,* 798 F.3d 1119, 1129 (D.C. Cir. 2015) (alteration omitted) (quoting *Iqbal*, 556 U.S. at 678). A court must "draw all reasonable inferences from those allegations in the plaintiff's favor," but not "assume the truth of legal conclusions." *Id.*

"In determining whether a complaint fails to state a claim, [a court] may consider only the facts alleged in the complaint, any documents either attached to or incorporated in the complaint and matters of which [a court] may take judicial notice." *EEOC v. St. Francis Xavier Parochial Sch.*, 117 F.3d 621, 624 (D.C. Cir. 1997).

### III. ANALYSIS

**A. This Claim Presents a New *Bivens* Context**

Because the Complaint's only count relies on *Bivens*, a brief account of that case is in order.

> In *Bivens*, the Supreme Court held that federal officers who violated the Fourth Amendment's prohibition against unreasonable searches and seizures could be held accountable for monetary damages without explicit statutory authorization for such damages. Before *Bivens*, only state officials who violated individuals' constitutional rights could be liable for money damages, *see* 42 U.S.C. § 1983; Congress has not enacted a similar statutory provision for federal officials. Since *Bivens*, the so-called implied cause of action for a constitutional violation has only been recognized by the Supreme Court in two other contexts: the Fifth Amendment's due process clause for an allegation of gender discrimination, and the Eighth Amendment's cruel and unusual punishments clause for the alleged failure to provide adequate medical treatment to an inmate.

*Jangjoo v. Sieg*, ___ F. Supp. 3d ___, 2018 WL 3418784, at *4 (D.D.C. July 13, 2018) (citations omitted). In *Ziglar v. Abbasi*, the Supreme Court explained that *Bivens* arose when courts made different assumptions about their authority to imply causes of action, suggesting that "it is possible that the analysis in the Court's three *Bivens* cases might have been different if they were decided today." 137 S. Ct. at 1856. In any event, "expanding the *Bivens* remedy is now a 'disfavored' judicial activity." *Id*. at 1857 (quoting *Iqbal*, 556 U.S. at 675).

For future *Bivens* cases, *Abbasi* clarified the correct analytical approach. First, courts must ask whether the alleged cause of action arises in a new or previously recognized *Bivens*

context. *Id*. at 1859. Any "meaningful" difference between a prior *Bivens* context and the case at issue makes the context new, including:

> the rank of the officers involved; the constitutional right at issue; the generality or specificity of the official action; the extent of judicial guidance as to how an officer should respond to the problem or emergency to be confronted; the statutory or other legal mandate under which the officer was operating; the risk of disruptive intrusion by the Judiciary into the functioning of other branches; or the presence of potential special factors that previous *Bivens* cases did not consider.

*Id*. at 1859-60. If the context is not new, then existing *Bivens* precedent controls. But if the context is new, then courts must ask whether "special factors" counsel against implying a damages action based on a violation of a constitutional right. *Id*. at 1857. This inquiry "must concentrate on whether the Judiciary is well suited, absent congressional action or instruction, to consider and weigh the costs and benefits of allowing a damages action to proceed." *Id*. at 1857-58. "[I]f there are sound reasons to think Congress might doubt the efficacy or necessity of a damages remedy," then the Judiciary should defer and allow Congress to play its proper role. *Id*. at 1858.

This case presents a new context. To start with, the Supreme Court has never authorized a damages remedy for a First Amendment violation, and it seems unlikely to do so in the wake of *Abbasi*. *Id*. at 1854-55, 1857 (explaining that the Court has refused to extend *Bivens* for 30 years, including in the First Amendment context); *Jangjoo*, 2018 WL 3418784, at *6 ("In the First Amendment context, the Court has addressed but never affirmatively extended *Bivens*.") (citations omitted).

The Plaintiff contends that the Supreme Court recognized a *Bivens* remedy for First Amendment retaliation in *Hartman v. Moore*, 547 U.S. 250, 256 (2006). Pl.'s Mem. In Opp. To Defs.' Mot. Dismiss (Pl.'s Opp) 8-9. He makes an understandable mistake, since *Hartman* was a

*Bivens* case in which the Supreme Court declared that "[o]fficial reprisal for protected speech" violates the First Amendment, and that "[w]hen the vengeful officer is federal, he is subject to an action for damages on the authority of *Bivens*." 547 U.S. at 256. But the plaintiff *lost* in *Hartman*, because the Court's core holding was that a plaintiff claiming retaliatory prosecution must allege and prove the lack of probable cause. *Id.* at 252, 265-66. Decisions since *Hartman* have consistently said that the Supreme Court has not approved a First Amendment *Bivens* claim. *Reichle v. Howards*, 566 U.S. 658, 663 n.4 (2012) (explaining, just before a long discussion of *Hartman*'s impact on qualified immunity, that "[w]e have never held that *Bivens* extends to First Amendment claims"); *Iqbal*, 556 U.S. at 675 (assuming without deciding that a First Amendment free exercise claim lies under *Bivens*); *Abbasi*, 137 S. Ct. at 1854-55 (listing only "three cases," none under the First Amendment, as "the only instances in which the Court has approved of an implied damages remedy under the Constitution itself."). Even accounting for *Hartman*, Supreme Court precedent does not support the Plaintiff's claim that *Bivens* extends to the First Amendment.

In any event, the "new context" inquiry does not end even if courts have extended *Bivens* to the relevant constitutional right. *Abbasi*, 137 S. Ct. at 1859-60. The D.C. Circuit has recognized First Amendment *Bivens* claims for retaliatory arrest, *Dellums v. Powell*, 566 F.2d 167, 196 (D.C. Cir. 1977), and retaliatory prosecution, *Haynesworth v. Miller*, 820 F.2d 1245, 1255–57 (D.C. Cir. 1987), *abrogated in part by Hartman*, 547 U.S. 250. The Circuit has also assumed that *Bivens* was available for a prisoner who asserted retaliatory restrictions in violation of the First Amendment, dismissing those claims on qualified immunity grounds. *Aref v. Lynch*, 833 F.3d 242, 269 (D.C. Cir. 2016). But even assuming these cases are still good law, *see Abbasi*, 137 S.Ct. at 1859 (finding that the lower court erred in its "new context" analysis

because the context is new if "the case is different in a meaningful way from previous *Bivens* cases decided by *this* Court) (emphasis added), they are all strikingly different from Mr. Storms' allegations.  This case is not brought by a prisoner, and the Plaintiff does not suggest that the Defendants arrested or prosecuted him.  Instead, Mr. Storms claims that the Defendants persuaded a non-governmental organization to remove him from a volunteer position.  Under *Abbasi*'s meaningful difference test, *see id.* at 1859-60, Mr. Storms' allegations present a new context for a proposed *Bivens* claim in this Circuit.

### B. Special Factors Counsel Against Creating a Damages Remedy

Since this is a new *Bivens* context, I must now ask whether "special factors counsel[] hesitation" in allowing this suit to go forward, and "[i]n a related way, if there is an alternative remedial structure present . . . that alone may limit the power of the Judiciary to infer a new Bivens cause of action." *Abbasi*, 137 S.Ct. at 1858.  I conclude that while the allegations here are deeply troubling for First Amendment values, special factors counsel hesitation in judicially creating a damages remedy against federal officials who persuade private entities to terminate volunteers.  Those factors include the speech interests of the federal officials themselves, this country's reluctance to extend free speech protections to private sector employment, and the existing patchwork of federal statutes that provide accountability for federal officials. Ultimately, in the complex, fraught arena of free speech, Congress is better suited than the Judiciary to determine whether a damages action should arise.

At the outset, I assume without deciding that the Defendants' alleged actions violated the First Amendment rights of Mr. Storms.  *See Bush v. Lucas*, 462 U.S. 367, 372 (1983) (taking the same approach in deciding not to extend *Bivens* to First Amendment claims made by public employees).  Thus, I take no issue with Mr. Storms' argument that he has First Amendment

interests at stake. *See* Pl.'s Opp. to Defs.' Mot. Dismiss (Pl.'s Opp) 14; *Hartman*, 547 U.S. at 256 ("Official reprisal for protected speech offends the Constitution because it threatens to inhibit exercise of the protected right.") (internal quotation marks, alteration, and citation omitted).

The first special factor counseling hesitation is the fact that the government has speech interests of its own, as do federal employees speaking as citizens. The government has broad authority to speak for itself, without facing unique court-imposed liability regimes.

> With countless advocates outside of the government seeking to influence its policy, it would be ironic if those charged with making governmental decisions were not free to speak for themselves in the process. If every citizen were to have a right to insist that no one paid by public funds express a view with which he disagreed, debate over issues of great concern to the public would be limited to those in the private sector, and the process of government as we know it radically transformed.

*Keller v. State Bar of California*, 496 U.S. 1, 12 (1990). Creating a *Bivens* remedy here would risk turning the First Amendment into a government-silencing mechanism.

"When the government speaks, for instance to promote its own policies or to advance a particular idea, it is, in the end, accountable to the electorate and the political process for its advocacy. If the citizenry objects, newly elected officials later could espouse some different or contrary position." *Bd. of Regents of Univ. of Wisconsin Sys. v. Southworth*, 529 U.S. 217, 235 (2000). Thus,

> Retaliation claims involving government speech warrant a cautious approach by courts. Restricting the ability of government decisionmakers to engage in speech risks interfering with their ability to effectively perform their duties. It also ignores the competing First Amendment rights of the officials themselves. The First Amendment is intended to "preserve an uninhibited marketplace of ideas in which truth will ultimately prevail." *McCullen v. Coakley*, 134 S. Ct. 2518, 2529 (2014) (quoting *FCC v. League of Women Voters of Cal.*, 468 U.S. 364, 377 (1984)). That marketplace of ideas is undermined if

> public officials are prevented from responding to speech of citizens with speech of their own. *See Bond v. Floyd*, 385 U.S. 116, 136 (1966) ("The interest of the public in hearing all sides of a public issue is hardly advanced by extending more protection to citizen-critics than to legislators.").

*Mulligan v. Nichols*, 835 F.3d 983, 989 (9th Cir. 2016). Even to the extent that public officials speak *not* for the government, but in their capacity as private citizens, "the First Amendment protects a public employee's right, in certain circumstances, to speak as a citizen addressing matters of public concern." *Garcetti v. Ceballos*, 547 U.S. 410, 417 (2006). "So long as employees are speaking as citizens about matters of public concern, they must face only those speech restrictions that are necessary for their employers to operate efficiently and effectively." *Id*. at 419. These interests must be considered here.

Of course, the government action that Mr. Storms challenges is arguably destructive of First Amendment values, contributing little to "an uninhibited marketplace of ideas in which truth will ultimately prevail." *McCullen*, 134 S. Ct. at 2529. Setting aside the surrounding details, the Defendants' alleged persuasion of the VFW to terminate Mr. Storms aimed to undermine and chill his speech, rather than advance a competing idea. This is particularly troubling since Mr. Storms claims that the article was later verified by government investigations about the VA's wait time practices. Compl. ¶ 13. But as *Abbasi* reminds us:

> the decision to recognize a damages remedy requires an assessment of its impact on governmental operations systemwide. Those matters include the burdens on Government employees who are sued personally, as well as the projected costs and consequences to the Government itself when the tort and monetary liability mechanisms of the legal system are used to bring about the proper formulation and implementation of public policies.

*Abbasi*, 137 S. Ct. at 1858. Not every case will involve the cover-up of a substantial scandal. Not every case will involve equities that clearly favor the plaintiff. Even if the government has

no First Amendment right to call for private sector firings in retaliation for protected speech, the risk of chilling legal government speech or the protected free speech of public employees must be considered. And the political accountability that government speakers face is already one form of restraint imposed by our democratic system. *Southworth*, 529 U.S. at 235.[2] Speech is already a fraught and contested arena. Injecting a damages remedy against federal officials may not be the best course, even to advance the freedom of speech.

The second special factor counselling caution is the First Amendment's limitation to government action. The Constitution says that "*Congress* shall make no law . . . abridging the freedom of speech." U.S. Const. amend. I (emphasis added). "[A]s a general matter the First Amendment prohibits *government* officials from subjecting an individual to retaliatory actions, including criminal prosecutions, for speaking out." *Hartman*, 547 U.S. at 256 (emphasis added); *see also Waters v. Churchill*, 511 U.S. 661, 694–95 (1994) ("Absent some contractual or statutory provision limiting its prerogatives, a private-sector employer may discipline or fire employees for speaking their minds.") (Stevens, J., dissenting). Mr. Storms proposes that private sector firings can be attributed to the government, and thus linked to the First Amendment, using the test for state action under the Fourteenth Amendment. *See* Opp. 14; *Blum v. Yaretsky*, 457 U.S. 991, 1004 (1982) (holding the government "responsible for a private decision only when it has exercised coercive power or has provided such significant encouragement, either overt or covert, that the choice must in law be deemed to be that of the State."). Even if I accepted this or some other formulation for when the government could be held liable for private sector

---

[2] Here, Mr. Storms claims that Secretary Shinseki ultimately resigned as a casualty of the underlying scandal. Opp. 2 n.3, 21. Although the resignation was not because of the alleged retaliation against Mr. Storms, the price that Secretary Shinseki paid for the truths that Mr. Storms allegedly sought to expose shows that political accountability works.

decisions, the resulting shift would still be significant: private sector firings could now trigger First Amendment claims against federal officials.

This change, even if beneficial in some respects, might create complicated issues for both private and public-sector decision making, as actors must deal with litigation risk and its inevitable costs. Such a decision would expand the First Amendment's scope in ways difficult to predict. For instance, it could further complicate government contractors' hiring and firing decisions, forcing both them and their client agencies to consider what liability their internal personnel decisions may create for government officials. I hesitate to make such a significant decision as a member of the Judiciary when Congress—our Nation's law-making body—is fully equipped to consider the complicated factors at issue, and act.

The named Defendants also contend that the Privacy Act and the Administrative Procedure Act (APA) provide alternative remedies for Mr. Storms' injury and thus counsel caution in creating a *Bivens* remedy. Defs.' Mem. In Support of Mot. Dismiss (Mot. Dismiss) 13-14. The APA does have some limited relevance, since that statute allows citizens to challenge final agency actions, including agency "sanction[s]" such as the "imposition of a penalty." 5 U.S.C. §§ 701, 551(10), (13). It may not be a final agency action for Mr. Secor to call the VFW and insist that Mr. Storms be terminated, and APA plaintiffs cannot recover damages after the fact under the statute, making APA *relief* irrelevant to Mr. Storms. *See* 5 U.S.C. § 706. But the APA's existence points to another fact: Congress has created a broad array of statutory mechanisms that can prevent federal wrongdoing against those in the private sector. These include statutes that help citizens to hold government accountable, from the APA

and the Privacy Act,[3] to the Freedom of Information Act, 5 U.S.C. § 552, and many whistleblower protection statutes. *See* 5 U.S.C.A. § 2302(b)(8)-(9) (the Whistleblower Protection Act); *see also* Occupational Safety and Health Administration, Worker Protections, https://www.whistleblowers.gov/worker_protections (listing 22 whistleblower protection statutes enforced by the Occupational Safety and Health Administration in the U.S. Department of Labor) (last visited August 6, 2018). There is even a criminal law against influencing private sector employment decisions—based on "partisan political affiliation"—using government blackmail or bribery. 18 U.S.C. § 227.

      To be fair to Mr. Storms, none of these statutes focus on remedying this particular First Amendment injury, and so none constitute "an alternative remedial structure present in [this] case," *Abbasi*, 137 S. Ct. at 1858 (2017). Thus, this specific "wrong [may] . . . go unredressed." *Bush*, 462 U.S. at 388. But the fact that Congress has enacted so many measures aimed at creating federal accountability shows their engagement on this subject. This fact counsels hesitation in crafting a damages remedy that Congress itself has not approved. *See Wilson v. Libby*, 535 F.3d 697, 705 (D.C. Cir. 2008) (explaining that "[t]he absence of statutory relief for a constitutional violation . . . does not by any means necessarily imply that courts should award money damages," and a proper special factors analysis includes "an appropriate judicial deference to indications that congressional inaction has not been inadvertent") (quoting *Schweiker v. Chilicky*, 487 U.S. 412, 421-23 (1988)).

---

[3] Contrary to the named Defendants' assertions, I see only the slightest relevance in the Privacy Act, since it merely controls agency disclosure of agency records, *see* 5 U.S.C. § 552a(b)-(f), and authorizes civil remedies for violations. *Id*. § 552a(g)(1). None of the allegations here involve the improper disclosure of agency records.

For all of these reasons, no *Bivens* cause of action exists for Mr. Storms claim, and under the analysis required by *Abbasi*, this Court should not create one.[4] Since the complaint therefore fails to state a claim upon which relief can be granted, I have no occasion to consider whether the Defendants would be entitled to qualified immunity.

## IV. CONCLUSION

This Court does not condone the Defendants' alleged actions. But no damages remedy currently exists for the First Amendment retaliation that Mr. Storms describes, and it is the job of Congress to decide if such a remedy should be created. This conclusion applies equally to the named and unnamed Defendants, so the named Defendants' Motion to Dismiss will be granted and the Complaint will be dismissed. A separate order will issue.

Dated: August 6, 2018

2018.08.06
17:57:47
-04'00'

TREVOR N. MCFADDEN
United States District Judge

---

[4] The Complaint contains precious little about the conduct of Secretary Shinseki himself, or of Assistant Secretary Riojas. The only specific allegations are that these officials were among the Defendants who "determined" that retaliation against Mr. Storms should occur, Compl. 21, and that Assistant Secretary Riojas said "Thanks Bob" after receiving a copy of the VFW's rebuttal article. Compl. 29. But "Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of *respondeat superior*." *Iqbal*, 556 U.S. at 676. Because Mr. Storms alleges no act of retaliation from these senior leaders, and he only hints at implied commands, his claims against them would be unlikely to survive even if *Bivens* applied.

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **Derrick Storms**, <br><br> Plaintiff, <br><br> v. <br><br> **Eric K. Shinseki**, *et al.*, <br><br> Defendants. | Case No. 1:17-cv-00357 (TNM) |

## ORDER

For the reasons set forth in the accompanying Memorandum Opinion, it is hereby

**ORDERED** that the Defendants' Motion to Dismiss is GRANTED, and the Plaintiff's Complaint is DISMISSED.

**SO ORDERED**.

This is a final, appealable order.

Dated: August 6, 2018

2018.08.06
17:05:24 -04'00'

TREVOR N. MCFADDEN
United States District Judge